UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
SCOTT GUNNELLS,

         Plaintiff,

     -against-

MICHAEL JOSEPH TEUTUL, et
al.,

         Defendants.
```

19-cv-5331 (JSR)
19-cv-5312

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.

On February 18, 2020, the Court entered default judgment against Joseph Teutul, Paul Teutul, and Orange County Choppers, Inc. (the "defaulting defendants") in the above-captioned action. Three months later, on May 20, 2020, the defaulting defendants filed a motion to vacate the default judgment against them. For the reasons that follow, the motion to vacate the default judgment is granted.

I.   Background

The history of this case is somewhat convoluted, reflecting less than ideal conduct by both sides. On June 6, 2019, plaintiff Scott Gunnells filed his initial complaint against a number of defendants for alleged copyright infringement. ECF No. 1. Gunnells, a photographer, alleged that he took certain headshots of Michael Teutul, which the defendants used without

his permission in Michael Teutul's merchandise and on the television show "American Chopper."

On August 8, 2019, plaintiff filed a motion for default judgment as to the defaulting defendants, Michael Joseph Teutul, Paul Teutul, and Orange County Choppers, Inc., who had failed to yet appear in the matter. ECF No. 28.[1] On August 15, 2020, the Court denied plaintiff's motion for default judgment on the ground that the majority of the claims asserted in the complaint appeared on their face to be time barred. ECF No. 32. The Court, however, provided plaintiff the opportunity to file an amended complaint to cure this deficiency, and noted that if the defaulting defendants again failed to appear, plaintiff could renew his motion for default judgment. Id. Plaintiff submitted an amended complaint on August 30, 2019. ECF No. 35. Plaintiff, however, failed to renew his motion for default judgment even though defendants again failed to appear.

On January 3, 2020, over four months after plaintiff filed his amended complaint, the Court held a final pretrial conference as scheduled in the case management plan for this matter. See ECF No. 24, 48. Neither counsel for plaintiff nor counsel for any of the defaulting defendants appeared. ECF No.

---

[1] The plaintiff settled the case with the remaining defendants, Discovery, Inc. and Pilgrim Media Group, LLC, around the same time. See ECF No. 31, 38.

48. The Court therefore dismissed the case for failure to prosecute, but without prejudice to plaintiff's counsel filing a brief explaining why the case should be reinstated. Id. After plaintiff filed such a brief on January 17, 2020, ECF No. 50, the Court reinstated the case on January 25, 2020, ECF No. 51. On January 30, 2020, plaintiff filed a renewed motion for default judgment against the defaulting defendants, who had still not appeared. ECF No. 54. On February 18, 2020, the Court entered default judgment against the defaulting defendants. ECF No. 67.

Three months later, on May 20, 2020, the defaulting defendants filed a motion, pursuant to Rule 60(b), seeking to vacate the Court's entry of default judgment against them. ECF No. 70. On May 27, 2020 the Court held a telephonic conference regarding this motion. Both at this conference and in their memorandum supporting their motion, the defaulting defendants attributed their default largely to the alleged malfeasance of the lawyer who they claimed had previously agreed to represent them, Thomas Vasti, III, Esq. See Mem. of Law in Support of Mot. to Vacate Default Judgment, ECF No. 70. In response, the Court provided Vasti the opportunity to give his side of the story. ECF No. 73. Vasti submitted a responsive declaration on June 9, 2020, stating, in effect, that he had never agreed to represent

the defaulting defendants. <u>See</u> Decl. of Thomas F. Vasti, III ("Vasti Decl."), ECF No. 75.

II.  <u>Analysis</u>

A motion to vacate a default judgment is "addressed to the sound discretion of the district court." <u>SEC v. McNulty</u>, 137 F.3d 732, 738 (2d Cir.1998). As relevant here, a Rule 60(b) motion to vacate a judgment may be granted on the basis of "excusable neglect," Fed. R. Civ. P. 60(b)(1), or for "any other reason justifying relief from the operation of the judgment," Fed. R. Civ. P. 60(b)(6); <u>see also</u> Fed. R. Civ. P. 55(c) (providing that default judgments may be set aside in accordance with Rule 60(b)). Given the breadth of this discretion, however, the Court of Appeals has suggested that courts, in deciding whether to vacate a default judgment, consider three factors: (1) whether the default was "willful"; (2) whether a meritorious defense is presented; and (3) whether setting aside the default would prejudice the non-moving party. <u>McNulty</u>, 137 F.3d at 738. While none of these factors is alone dispositive, the Court should consider and weigh all three.

a. <u>Willfulness</u>

The first consideration in determining whether to vacate the entry of a default judgment is examining whether the default was "willful." In order to be willful, the defaulting party's conduct must be "egregious" rather than "merely negligent or

4

careless." Id. at 738. Where a defaulting party attributes its default to the conduct of its lawyer, such conduct "will be imputed to the party himself where he makes no showing that he has made any attempt to monitor counsel's handling of the lawsuit." Id. at 740.

Here, the defaulting defendants attribute their default to the alleged malfeasance of Thomas Vasti III, Esq., who they claim represented them in this matter. Vasti, for his part, denies that he was ever retained in this case. Specifically, in their sworn declarations, the defaulting defendants claim that they retained Vasti to handle their defense after learning of the suit, spoke to Vasti on several occasions about the lawsuit, specifically followed up with Vasti in February 2020, and received assurances from Vasti that he was protecting their interests in this matter. See Decl. of Joan Kay in Support of Mot. to Vacate Default Judgment ("Kay Decl.") ¶¶ 5-7, ECF No. 71-1; Supp. Decl. of Joan Kay in Support of Mot. to Vacate Default Judgment ("Supp. Kay Decl.") ¶¶ 7-10, ECF No. 82-1. Indeed, the Chief Operating Officer of defendant Orange County Choppers ("OCC"), Joan Kay, represents that Vasti even went through the complaint with her line by line. Supp. Kay Decl. ¶ 8. In further support of these claims, defaulting defendants submit a number of text and email communications in which various parties indicate their belief that Vasti was

representing the defaulting defendants. Kay Decl., Exh. A-C;
Supp. Kay Decl., Exh. A. While some of these communications were
made directly to Vasti, inquiring about the status of the case,
none of the communications actually contains a response from
Vasti.

In contrast, Vasti has submitted his own declaration
swearing that he never agreed to represent the defendants in
this matter. Vasti acknowledges that he has represented persons
at OCC in the past and that he had a number of discussions with
Kay about this particular case. See Vasti Decl. ¶¶ 3, 16-17, 19-
22. However, he asserts not only that he was never formally
retained, but also that he specifically told Kay that he would
not take up representation in this matter until he was both paid
for a prior representation and paid a new retainer, neither of
which contingencies occurred. Id. ¶¶ 20, 22-24, 27. While Vasti
acknowledges receiving a February 4, 2020 email from Kay
informing him of developments in the case and claiming that
Vasti had represented he "w[as] going to file a motion" in the
case, he avers that he must have overlooked this email due to an
illness at the time. Id. ¶ 26, Exh. 9.

These competing declarations render it difficult to
determine whether the defaulting defendants' conduct in this
matter rises to the level of willful. If it is true, as Vasti
asserts, that he specifically told Kay that he would not

represent the defendants in this matter unless they paid him what they owed him plus a retainer, and the defendants nonetheless failed to pay him, their conduct very well may have been willful. Such facts would suggest that the defaulting defendants were fully aware that Vasti would not represent them until he was paid, rendering their failure to take further action to protect their interests in this case egregious. It is unclear, however, whether Vasti's representations are true and accurate based on the defaulting defendants' own contrary representations, not to mention Vasti's admitted failure to require payment or a retainer for his legal services related to one or more of the defaulting defendant in past matters (see Vasti Decl. ¶¶ 3-11, 14), and the inferences to be drawn from the documented communications between Vasti and the defaulting defendants.

Given these competing allegations concerning the egregiousness of the defaulting defendants' conduct, the Court would need to conduct an evidentiary hearing to ascertain with reasonable certainty whether the defaulting defendants' conduct was willful. However, consideration of the other two factors makes it unnecessary to conduct such a hearing.

b. The Existence of Meritorious Defenses

The next factor, whether defendants have presented a meritorious defense, weighs clearly in favor of vacating the

default judgment. "To make a sufficient showing of a meritorious defense" on a motion to vacate a default judgment, a movant "need not establish his defense conclusively," but must present evidence of facts that, "if proven at trial, would constitute a complete defense." McNulty, 137 F.3d at 740 (internal citations omitted). While the defendants raise a number of purportedly meritorious defenses in their briefing, including that the allegedly infringing conduct did not involve two of the defaulting defendants at all and that the plaintiff consented to the use of his photographs, the defense that most clearly meets the aforesaid requirement is the defaulting defendants' statute of limitations defense.

Copyright infringement claims are subject to a 3-year statute of limitations, which runs from the date of discovery of the infringing activity. Psihoyos v. John Wiley & Sons, Inc., 748 F.3d 120, 124-25 (2d Cir. 2014). The defaulting defendants note that while plaintiff claims to have discovered all instances of infringing activity on or after October 2017, the plausibility of this claim is undermined by the fact that plaintiff, according to defendants, specifically took the photographs ten years ago for Michael Teutul's use in selling goods. If the defaulting defendants' version of the facts were proven true at trial, the statute of limitations would act as a complete defense to plaintiff's claims. Accordingly, the

defaulting defendants have made a showing of the existence of a meritorious defense, and the second factor weighs in favor of setting aside the default judgment.

    c. <u>Prejudice to Plaintiff</u>

The final consideration for determining whether to vacate a default judgment is evaluating whether the non-moving party, here the plaintiff, will suffer prejudice. In the context of a Rule 60(b) motion, "delay alone is not a sufficient basis for establishing prejudice." <u>New York v. Green</u>, 420 F.3d 99, 110 (2d Cir. 2005) (quoting <u>Davis v. Musler</u>, 713 F.2d 907, 916 (2d Cir. 1983)). Rather, "[s]omething more is needed" such as when a delay "thwart[s] plaintiff's recovery or remedy . . . result[s] in the loss of evidence, create[s] increased difficulties of discovery, or provide[s] greater opportunity for fraud and collusion." <u>Green</u>, 420 F.3d at 110. Plaintiff has made no such showing of "something more" here, demonstrating that the prejudice factor weighs strongly in favor of vacating the default judgment.

Plaintiff argues that he will be prejudiced by a vacatur of the default judgment because of the considerable time and expense he has dedicated to prosecuting this case. Much of this time and expense, however, is attributable to plaintiff himself. For example, the five-month delay between the filing of the first amended complaint and the second motion for default

judgment is entirely attributable to plaintiff's inaction. Furthermore, plaintiff's need to file a second complaint is attributable to the poor quality of plaintiff's initial pleadings.

Those delays or costs that are attributable to the defaulting defendants will not cause any prejudice to the plaintiff. First, while the defaulting defendants caused a delay of three months between the filing of the default judgment and their motion to vacate, plaintiff offers no explanation for how this delay will result in any prejudice, particularly in light of plaintiff's own delays in litigating this case and in bringing infringement claims that allegedly ripened almost three years earlier. Second, the only cost attributable to the defaulting defendants, the cost plaintiff incurred filing for and enforcing the second default judgment, can be reimbursed by the defaulting defendants, curing any prejudice.[2] Thus, there is no evidence that plaintiff will suffer prejudice if the default judgment is vacated, counseling strongly in favor of granting the defaulting defendants' motion.

---

[2] Although plaintiff also seeks reimbursement for the cost of opposing the defaulting defendants' present motion to vacate, the Court sees no basis for reimbursing this cost given that plaintiff freely chose to oppose this motion. Furthermore, plaintiff's request for Rule 11 sanctions is denied because none of the defaulting defendants' actions in seeking to vacate the default judgment were objectively unreasonable. Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000).

III. <u>Conclusion</u>

Based on the three considerations involved in determining whether to vacate the grant of a default judgment, the Court finds that vacatur is warranted here. In particular, while the first factor, the determination of whether the defaulting defendants' conduct was willful, cannot be made in the absence of an evidentiary hearing, the second and third factors weigh strongly in favor of setting aside the default judgment.[3] Accordingly, the Court grants the motion to vacate the default judgment.

SO ORDERED.

Dated:   New York, NY

June 29, 2020

_____
United States District Judge

---

[3] As a means of minimizing prejudice, the Court orders that the defaulting defendants reimburse the plaintiff the costs incurred in moving for and enforcing the second default judgment. Plaintiff should submit an accounting of such costs by July 2, 2020, following which defendants can submit any challenge to such costs by July 9, 2020. The Court will convene a telephonic conference on all aspects of this case on July 16, 2020 at 11:00 am.